Henry DANIELS, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 19324.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 18, 1965.

Decided Feb. 11, 1966.

Petition for Rehearing En Banc Denied March 24, 1966.

Bazelon, Chief Judge, dissented.

Mr. William Malone, Denison, Tex. (appointed by this court), for appellant.

Mr. Henry J. Monahan, Asst. U. S. Atty., with whom Messrs. Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and DANAHER and TAMM, Circuit Judges.

DANAHER, Circuit Judge:

We are unanimous that the delay of some eight weeks between the date of sale and the appellant's arrest was not unreasonable and prejudicial.[1] We find no error respecting appellant's claim on this aspect of the case.

After a trial otherwise free from error, the trial judge denied appellant's motion for a new trial based upon the claim that a juror by her silence at voir dire had deprived him of an opportunity to show her possible bias. It is argued that the ruling was erroneous as a matter of law.

The record shows that the prospective jurors had been sworn. The prosecutor explained that appellant had been charged with violation of the narcotics laws. Respective counsel were introduced and prospective witnesses were identified. The prosecutor then asked:

Is there any reason why you can't decide this case fairly and impartially upon the evidence as it will be given by the prospective witnesses during the course of this trial?

(No response.)

Is there any reason that comes to your mind which would cause any of you to hesitate as the triers of the facts in a narcotics case?

(No response.)

I assume by your silence that the answers to these questions are in the negative?

(No response.)

Defense counsel asked if any juror had ever been employed by the police department. One juror answered affirmatively.

Defense counsel continued:

Do any of you have relatives or close friends with the Federal Bureau of Investigation?

(No response.)

Are any of you or do you have close relatives who are connected

1. Powell v. United States, 122 U.S.App. D.C. ——, 352 F.2d 705 (1965); Jackson v. United States, 122 U.S.App.D.C. ——, 351 F.2d 821 (1965); Bey v. United States, 121 U.S.App.D.C. 337, 350 F.2d 467 (1965); Roy v. United States, 123 U.S.App.D.C. ——, 356 F.2d 785 (Sept. 2, 1965), Petition for Rehearing En Banc Denied March 11, 1966; Cannady v. United States, 122 U.S.App.D.C. ——, 351 F. 2d 796 (1965); cf. Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965).

with the Treasury Department or the Internal Revenue Service?

(No response.)

The silence of one juror at that point predicated the post-conviction motion for a new trial. It does not appear of record [2] that the juror was so employed at the time in question. However, the transcript of the argument indicates that the judge and both counsel took as established, that the jury list in the possession of counsel listed a certain woman juror and gave her occupation as a check numberer in the Treasury Department. There was no suggestion that she was in any way connected with law enforcement problems in the Narcotics Bureau.

Counsel at the argument on his motion explained that at the trial he had had a law student as an assistant. He had asked the assistant to help him with the jury list. "He never informed me of any connection between this Mrs. Mickens and the Treasury Department. Whether he spotted it or whether it had any significance to him, I do not know."

Defense counsel urged:

"A check of my list indicates there may have been ten jurors who were government employees. I don't object to the fact she was a government employee. I don't think that was material. I think the mere fact she was employed by the Treasury Department is definitely material. Her agency, the one who pays her, her immediate superiors — — — she is certainly aware that the Bureau of Narcotics is an agency of the Treasury Department. I defi-

nitely feel it is material in this case, in a narcotics case."

The trial judge after argument ruled:

"I frankly say to you that that which is the basis of your motion now, namely, that there was a person from the Treasury Department—as I recall, a numberer of checks of a non-enforcement division of the Treasury—was not a basis for a new trial. Actually, there is no concealment of this, and the jury list does in fact recite,[3] as I recall, that this juror was a check numberer of the Treasury Department.

"I am going to deny your motion."

We believe the trial judge did not abuse his discretion.[4] It seems clear that the judge deemed of scant materiality that the particular juror when impaneled before trial had failed to respond to one of many questions asked by counsel on voir dire. In colloquy at the hearing the judge asked:

"Do you think it is significant, peculiar as to its relation, or lack of relation to materiality, the fact that this juror was not in the enforcement branch of the Treasury Department, was a mere check numberer?"

The experienced trial judge, exercising his discretion with respect to a motion for new trial, obviously was of the view that there was no merit of substance to the appellant's post-conviction claim. The judge knew that defense counsel had asked an assistant to try to help him with the jury list which identi-

---

2. See note 3, *infra*.

3. Appellate counsel on brief tells us "That Mrs. Mickens was employed by the Treasury Department does not appear in the record, although the government's opposition to appellant's motion for a new trial concedes the fact by implication." He asks us to take judicial notice of the juror's questionnaire in the Jury Commission's files. The Government on brief tells us that the mimeographed master list of jurors gave the name and address

of the woman juror with her occupation "Check numberer—Treas. Dept."

That undoubtedly was the list as to which counsel had asked the help of his assistant. We think there is no question, from the argument of trial counsel and the pronouncement by the judge, that counsel then had such a list containing an entry as shown.

4. Frazier v. United States, 335 U.S. 497, 512, 69 S.Ct. 201, 93 L.Ed. 187 (1948).

fied the prospective juror and her occupation. The judge knew that counsel claimed that on the very night when the trial had been concluded, he returned to his office and then discovered that this particular juror had been or was employed by the Treasury Department. The prosecutor had commented that if defense counsel had been diligent, so simple a "discovery" could have been made *before* a one-day trial as it was readily apparent that evening. In that context, defense counsel explained that his mind had been taken up with other matters before trial and thus sought to meet the prosecutor's suggestion that he had not been diligent.

The judge could not have failed to know how often appointed counsel are charged with having rendered ineffective assistance. He observed that he thought counsel had been "diligent" in his client's interest, and the judge pointed to the "alertness" with which the motion for new trial had been filed, just as he had demonstrated during trial that he had been "diligent" in behalf of his client.

But the judge readily could have concluded that what was so easily "discovered" after trial could have been noticed before trial except that counsel had turned the jury list over to his assistant. Taking into account the scant materiality of the defense claim and the absence of challenge before trial, we can not say that there was such an abuse of discretion as to require that the verdict be set aside and that a new trial be granted. Cf. FED.R.CRIM.P. 52(a). Such considerations were epitomized by the Supreme Court, thus:

> "Whether or not employment in the Treasury outside the Narcotics Bureau would constitute ground for

challenge for 'actual bias,' such employment in the connections disclosed here affecting Moore and Root was not so obvious a disqualification or so inherently prejudicial as a matter of law, in the absence of any challenge to them before trial, as to require the court of its own motion or on petitioner's suggestion afterward to set the verdict aside and grant a new trial." [5]

Affirmed.

BAZELON, Chief Judge (dissenting):

Appellant was convicted of violations of the narcotics laws. He first contends that his conviction should be reversed because the two-month and five-day delay between the date of the alleged sale and his arrest was unreasonable and prejudiced his defense. A review of the testimony at trial demonstrates, however, that the Government's case was not "of such slender dimensions" as to require reversal of the conviction. The corroboration of the undercover agent's identification of appellant by another witness to the transaction and the relative shortness of the delay lead to the conclusion that the police conduct in this case was reasonable.[1] Nor was appellant's claim of prejudice as strong as that in Ross v. United States, *supra* note 1. The risk of conviction of an innocent person—the basic concern of the Narcotics Delay cases [2]—was no greater here than in the ordinary criminal case.

Appellant's second argument is based on the following occurrence. During the voir dire examination, trial counsel for appellant asked the prospective jurors:

> "Are any of you or do you have close relatives who are connected with the Treasury Department or the Internal Revenue Service?"

5. Frazier v. United States, *supra* note 4, 335 U.S. at 513, 69 S.Ct. at 210; and see Spivey v. United States, 109 F.2d 181 (5 Cir.), cert. denied, 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401 (1940); cf. United States v. Dennis, 183 F.2d 201, 228 (2 Cir. 1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

1. See, *e. g.*, Ross v. United States, 121 U.S. App.D.C. 233, 235, 349 F.2d 210, 212–13 (1965); Bey v. United States, 121 U.S.App.D.C. 237, 350 F.2d 467 (1965).

2. See, *e. g.*, Salley v. United States, 122 U.S.App.D.C. ——, 353 F.2d 897, 898 (Nov. 24, 1965); Cannady v. United States, 122 U.S.App.D.C. ——, ——, 351 F.2d 817, 818 (1965).

There was no response to this question. After trial, counsel for appellant discovered that one of the jurors was employed by the Treasury Department, apparently as a check numberer. The trial court, after hearing oral argument, denied appellant's motion for a new trial based on the juror's failure to answer this question.

The function of voir dire is to implement the constitutional guarantee of an impartial jury, a fundamental right of our system of criminal justice. To this end, the trial court is charged with the duty of striking jurors for cause.[3] In addition, Congress has provided by rule and statute for peremptory challenges so that the parties may further insure an impartial jury; even when no actual bias appears, a juror may be struck because counsel, with or without reason, distrusts him. But neither judge nor counsel can do his part in securing an impartial jury, if a juror fails to respond truthfully to questions on voir dire. The question then arises under what circumstances is a false or misleading answer so significant as to require a new trial.

The case law has established three basic criteria to guide the trial court in ruling on motions for new trial based on improper responses at voir dire. First, if it is shown that the juror was biased against the losing party, a new trial is always required. No specific prejudice need be proved once it is clear that the constitutional guarantee of an impartial jury was violated.[4] Second, if it appears that the nondisclosure "resulted from a purposefully incorrect answer or from deliberate concealment," a new trial must be granted.[5] Since the juror has violated his oath and impaired the statutory right of peremptory challenge, the materiality of the withheld information is usually considered irrelevant. Finally, if the nondisclosure was innocent, the trial court has some discretion in deciding whether to order a new trial. Its judgment, however, should be based upon a consideration of the reasons for the juror's failure to disclose [6] and of the materiality of the undisclosed information.[7]

It is impossible to apply these three criteria in this case because no evidentiary hearing was held to determine the details of the withheld information or

---

3. Disqualification for cause may be based on either of two separate types of bias. The first is where the juror is aware of and admits a feeling of bias. The second, and more common, finding occurs when the judge makes a pragmatic judgment that the juror's relationship to the case is such that there is a substantial possibility of his unconsciously favoring one side or the other. See, *e. g.*, Frazier v. United States, 335 U.S. 497, 510 n. 19, 69 S.Ct. 201 (1948); *The Jury System in the Federal Courts*, 26 F.R.D. 409, 466 (1960).

4. *E. g.*, Ryan v. United States, 89 U.S.App. D.C. 328, 331–332, 191 F.2d 779, 782–783 (1951); Carpenter v. United States, 69 App.D.C. 306, 307, 100 F.2d 716, 717 (1938); Consolidated Gas & Equip. Co. v. Carver, 257 F.2d 111, 115–116 (10th Cir. 1958). *Cf.*, D.C.Code § 23–108 (1961). Stated alternatively, the rule is that a new trial must be granted where the undisclosed facts are such that, had they been known, a failure to dismiss the juror for cause would have been an abuse of discretion requiring a new trial.

5. Ryan v. United States, *supra* note 4, 89 U.S.App.D.C. at 331, 191 F.2d at 782; Carpenter v. United States, *supra* note 4, 69 App.D.C. at 307, 100 F.2d at 717. See also Orenberg v. Thecker, 79 U.S. App.D.C. 149, 143 F.2d 375 (1944).

6. For example: whether the questions were framed too technically to be understood, or whether the juror misunderstood the question or wrongly interpreted it. See, *e. g.*, Orenberg v. Thecker, *supra* note 5.

7. See, *e. g.*, cases cited in notes 4 and 5 *supra*; Photostat Corp. v. Ball, 338 F. 2d 783 (10th Cir. 1964). Two basic tests have evolved to measure the materiality of the nondisclosure. The first is whether the trial judge would have excused the juror out of an abundance of caution had the information been revealed on voir dire. The second is whether, in the opinion of the court, disclosure of the information would have resulted in a peremptory challenge to the juror.

the reasons for the juror's false response.[8] I think the trial court erred by not ordering this inquiry.[9] Appellant's motion for a new trial sufficiently revealed the necessity for such a hearing. He not only alleged a failure to respond by the juror, but he offered to prove the charge by documentary evidence. If more detailed allegations were required, the challenging party would have to conduct an extensive, and undesirable, private investigation, which would include questioning the juror out of court. Courts have generally been reluctant to authorize such practices.[10] In the context of this case the practice would raise a substantial danger of "browbeating" potential witnesses, of refusals to cooperate by those witnesses, and of more false responses by the suspect juror. I think it preferable that the inquiry be conducted in open court where all parties can be represented. This procedure is more orderly and should, in the long run, best serve discovery of the truth.

The majority's reliance on Spivey v. United States, 109 F.2d 181 (5th Cir. 1940) and Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201 (1948) indicates

that the judgment is affirmed solely on the ground that appellant's trial counsel failed to exercise due diligence in discovering the falsity of the response. But on the motion for new trial the court told defense counsel:

> "*I think that you have been diligent* in the interest of your client. I think that the alertness with which you filed this motion and [which you] demonstrated during the actual trial * * * shows that you have been diligent in his interest." [Emphasis added.]

The force of this statement was weakened but not destroyed by a later observation of the trial court.[11] The majority seems to explain this exchange by speculating on the mental processes of the trial court. I think this speculation is not sufficiently supported in the record and unduly minimizes the effect of the trial court's statement that defense counsel was diligent.

Appellant, moreover, alleges that his trial counsel was completely occupied immediately before trial in arguing a motion for dismissal of the indictment. In addition, it is not clear how long before

8. While it is unlikely that the juror possessed a subjective bias against appellant, it is possible that a complete examination of the nature of her employment and its relationship to the Narcotics Bureau of the Treasury Department would reveal professional or social ties to those charged with the enforcement of the narcotics laws. Under some circumstances these ties might require or permit a finding of bias. See note 3 *supra.* Alternatively, a finding of deliberate concealment would not be impossible, especially in view of the simplicity of the question which the juror failed to answer properly. Finally, until all the facts are known, it is impossible to measure accurately the materiality of the withheld information.

9. The Supreme Court has repeatedly emphasized the duty of the court to be particularly
> " * * * solicitous to discover whether * * * [the juror's governmental], employment, or * * * the relation of the particular governmental activity to the matters involved in the

prosecution * * * [resulted in] actual bias * * *." United States v. Wood, 299 U.S. 123, 134, 57 S.Ct. 177, 180, 81 L.Ed. 78 (1936).

See also, Dennis v. United States, 339 U.S. 162, 168, 70 S.Ct. 519, 94 L.Ed. 734 (1950); Frazier v. United States, 335 U.S. 497, 511–513, 69 S.Ct. 201 (1948). This responsibility should include the duty to order an evidentiary hearing when appropriate, even if the moving party fails explicitly to request one.

10. See, *e. g.*, Ryan v. United States, *supra* note 4, 89 U.S.App.D.C. at 330, 191 F.2d at 781; Mattox v. United States, 146 U.S. 140, 148–149, 13 S.Ct. 50, 36 L.Ed. 917 (1892).

11. Following the statement on diligence, the trial court concluded:
> "I frankly say to * * * [defense counsel] that * * * the basis of your motion * * * namely, that there was a person from the Treasury Department * * * was not a basis for a new trial. Actually, there is no concealment of this, and the jury list does in fact recite [this fact] * * *."

trial defense counsel received the jury lists which stated the occupations of the prospective jurors. Resolution of these facts relating to diligence is within the peculiar competence of the trial judge who participated in the proceedings. This court should not undertake to make such findings of fact from an ambiguous and incomplete record.

I would remand the case to the District Court for reconsideration of the motion for new trial after an evidentiary hearing on all the circumstances surrounding the juror's failure to answer the question on voir dire, including a re-examination of the issue of diligence.

Danaher, Circuit Judge, dissented.